UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEMANI MALIQ RHODES,<br><br>Defendant. | Case No. 25-CR-156 (LLA) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

While already on probation for illegally possessing a firearm in Maryland,[1] the Defendant, Kemani Maliq Rhodes, again possessed a firearm on May 5, 2025, in the District of Columbia. On that day, officers found the Defendant at the Deanwood Recreation Center and arrested him on an outstanding Maryland arrest warrant for a home invasion and armed robbery. After conducting a search incident to arrest, officers found a rifle-style firearm with large capacity magazine in the Defendant's backpack which he had been carrying on his shoulders. The rifle-style firearm that was found in the bag was loaded with seventeen rounds of 5.56 x 45 caliber ammunition in a magazine capable of holding thirty rounds.

This is now the Defendant's *third* firearms-related conviction in just as many years. In one of those offenses, he tossed a firearm onto the roof of the Seat Pleasant Activity Center. Not only was the defendant on supervised release at the time of his arrest, but this is the second time he has been caught carrying a firearm while on probation for a firearms-related offense.

Therefore, for the following reasons and consistent with the plea agreement in this case,

---

[1] Mr. Rhodes was sentenced on February 21, 2024, in case C-16-CR-23-002208 in Prince George's County, Maryland for illegally possessing a firearm. He was sentenced to two years confinement, of which one year and 2 months was suspended and received three years supervised release, to start on February 21, 2024.

Page **1** of 13

the Government respectfully requests that the Court impose a sentence of 23 months incarceration, followed by three years of supervised release.

## BACKGROUND

*The Offense*

On Monday, May 5th, 2025, at approximately 12:52 PM, Officer Mervin Hellman and Sergeant Taariq Cephas were operating a marked police cruiser when they responded to a request to assist Detective C. Reynolds with a Fugitive from Justice warrant for Mr. Rhodes. Detective Reynolds received information from the Prince George's County Police Department ("PGPD") that Mr. Rhodes was inside the Deanwood Recreation Center, located at 1350 49th Street NE, Washington, DC.

MPD Officers entered the Deanwood Recreation Center and located the Defendant in a community room along with staff members and other members of the public. As officers surrounded him, the Defendant tried to take off one of the straps of the bag and then attempted to flee from officers when they tried to apprehend him. Exhibit 1 (Officer Hellman Body-worn Camera at 13:04:30 hrs.). When an officer took hold of the Defendant's wrist, he immediately tried to break free from the officer's grip and flee the community room.



*Figure 1: RHODES' attempted flight with his backpack visible*

Several MPD officers had to restrain the Defendant as he actively resisted arrest. The Defendant continued to resist the officers even when he was in restraints and appeared to the officers to be reaching for something in his back pocket. Immediately upon being detained, the Defendant repeatedly insisted that the backpack that he was wearing on his shoulders belonged to his child's mother. Exhibit 1 (Officer Hellman Body-worn Camera at 13:04:41 hrs.).

Detective Schneeberg removed the book bag off his shoulders and kept it in her custody until a search incident to arrest revealed an AR-style pistol inside of the backpack the Defendant had been carrying.



*Figure 2: Gun next to backpack*



*Figure 3: Image of Gun*



*Figure 4: Image of Magazine*



*Figure 5: 5.56 x 45 Caliber Ammunition in Magazine*



*Figure 6: Image of All Ammunition Recovered from Magazine*

Later during a custodial interview at the Sixth District police station, the Defendant admitted to buying the firearm at issue from an individual once the Defendant's house arrest had terminated. He admitted to paying approximately $500 or $600 for the gun and said that it was his first weapon in the District of Columbia.

*Procedural History*

Mr. Rhodes was indicted in relation to this offense on May 28, 2025. On September 5, 2025, Mr. Rhodes pled guilty to violating D.C. Code § 4503(a)(1), Unlawful Possession of a Firearm (Prior Conviction).

*The Pre-Sentence Investigation Report*

The Pre-Sentence Investigation Report (PSIR) in this matter summarizes Mr. Rhodes' personal and criminal history. The Defendant is a 25-year-old man born in Washington, D.C. PSIR at 12, ¶ 40. He was raised by his mother in Seat Pleasant, Maryland. *Id.* at ¶42. The Defendant's father was reported to be schizophrenic, bipolar, and addicted to PCP and other drugs. *Id.* As a result, the Defendant did not meet his father until he was eight years old, and then did not see him

again until he was fourteen years old. *Id.* His mother was often away from the home, so he was left in the care of other family members. At the time of his arrest, the Defendant was working at an Amazon Distribution Center in Sterling, Virginia. *Id.* at ¶70.

The Defendant's first firearm conviction resulted from an incident on July 30, 2022, where officers went to serve a warrant on Mr. Rhodes at 3270 Livingston Road, in Indian Head, Maryland, but the Defendant was not present. ¶20. The same officers returned to the address later that same day for a report of an assault in progress. When they arrived, the Defendant was on the porch, but he ran into the nearby woods. *Id.* Officers eventually found the Defendant hiding under a vehicle, after which time the Defendant admitted to throwing a handgun into the woods. *Id.* Officers subsequently found the handgun and magazine in the area where he stated he discarded it. *Id.* The Defendant was convicted on January 5, 2023, in Charles County Circuit Court Case No. C-08-CR-22-000477 on two counts: Count 1 – Wearing, Carrying, and Transporting a Handgun on Person, and Count 2 - Illegal Possession of Ammunition. *Id.* As to both counts, the Defendant was sentenced to one year of incarceration, execution of sentence suspended as to all but 90 days to be served on electronic monitoring, with the sentences to run concurrently, followed by three years of probation. *Id.*

The Defendant's next firearm conviction resulted from conduct on May 11, 2023, in Prince George's County Circuit Court Case Number C-16-CR-23-002203, where the Defendant drew a revolver from his waistband while being chased by police and threw the firearm onto the rooftop of the Seat Pleasant Activity Center. PSR at ¶ 21. The Defendant also dropped a bookbag during the chase which contained 44 baggies holding a total of 350 grams of marijuana and 9 individually packaged baggies holding 9 grams of crack cocaine. *Id.* Notably, this conduct was committed while the Defendant was on probation for his prior firearms-related conviction in Charles County. The

Defendant pled guilty to Illegal Possession of a Firearm and was sentenced on February 21, 2024, to 2 years of incarceration, suspended as to all but 10 months to be served on home detention, followed by three years of supervised probation *Id.*

The Defendant's home detention was terminated on October 31, 2024, after multiple unspecified violations. *Id.* On April 30, 2025, a probation violation warrant was issued. That warrant remains active.

The Defendant has two other documented arrests which were either dismissed or no papered. *Id.* at 8-9. The Defendant was also previously arrested in Prince George's County for Assault in the Second Degree and Reckless Endangerment in Docket 0E00716772 which resulted in a STET docket. *Id.* at 8.

As discussed previously, the Defendant has an open warrant in Prince George's County for Home Invasion, Assault in the First Degree, Armed Robbery, and Felony Theft. This was the warrant that resulted in his arrest on May 5, 2025, and led to the discovery of the firearm in this case.

## **ARGUMENT**

In crafting a sentence, the Court must consider the factors set forth in 24 D.C. Code § 403.01(a), which requires the Court to impose a sentence that: (1) reflects the seriousness of the offense and the criminal history of the offender; (2) provides for the just punishment and affords adequate deterrence to potential criminal conduct of the offender and others; and (3) provides the offender with needed educational or vocational training, medical care, and other correctional treatment. *See* D.C. Code Section 24-403.01(a)(1-3). Furthermore, it is well-established that in determining the appropriate sentence for the defendant under the Voluntary Sentencing Guidelines, "the court may take into consideration any factor other than [race, gender, marital

status, ethnic origin, religious affiliation, or sexual orientation]." D.C. Sentencing Guidelines Practice Manual ("Sentencing Guidelines") at 1.1.6 (2025). This includes a review of the defendant's background, nature, and other crimes. *See Powers v. United States*, 588 A.2d 1166, 1169 (D.C. 1991) (sentencing judge "may conduct an inquiry broad in scope, largely unlimited as to the kind of information received and the source from which it is received"); *Sobin v. District of Columbia*, 494 A.2d 1272, 1275 (D.C. 1985) (courts "must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed").

## THE APPLICABLE SENTENCING GUIDELINES

The PSR estimates that Mr. Rhodes' District of Columbia Sentencing Guidelines Offense Severity Group is M8 and his Criminal History Category is Column C, yielding a guideline range of 14 to 32 months of prison, a long split, or a short split. ¶77. The offense of conviction carries a mandatory minimum sentence of 12 months of incarceration.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

Pursuant to the plea offer capping the Government's allocution to the midpoint of the applicable guideline range, the Government recommends that the Court sentence Mr. Rhodes to 23 months of imprisonment, followed by three years of supervised release. This sentence reflects the serious nature of this offense, Mr. Rhodes' criminal history, and provides adequate deterrence to others in the community, particularly given the danger presented by the carrying of loaded firearms equipped with large capacity magazines.

**I.  The Nature and Circumstances of Mr. Rhodes' Offense**

Mr. Rhodes pled guilty to carrying a loaded firearm. While the firearm was disassembled

and the offense is possessory in nature, this Court has warned against discounting the inherent danger associated with loaded firearms. Further, arguments concerning "mere possession" ignore the current epidemic of gun violence in our community. A loaded firearm is a deadly weapon. It has the ability with a single pull of the action to end a life. A firearm can escalate a mundane disagreement or a petty offense into a deadly encounter. And the reason law enforcement targets the possession of firearms prior to the commission of a crime is because once an individual makes the decision to produce a firearm and pull the trigger, law enforcement is powerless to intervene. The Defendant made the conscious decision to carry this firearm in, of all places, a community center, and he did so while he was on supervised probation for a firearms offense in Prince George's County. In sum, this was a dangerous offense justifying a 23-month term of incarceration.

II.     **The History and Characteristics of the Defendant.**

This is not Mr. Rhodes' first gun offense. This is not Mr. Rhodes' second gun offense. This is now Mr. Rhodes' third gun offense in just as many years. Though he later accepted responsibility for possessing and purchasing the firearm in a video-recorded interview, his first instincts were to distance himself from the bag by attempting to remove it and shift responsibility for the bag and its contents to his child's mother. This behavior is part of a familiar pattern. In his first firearm conviction, he fled from police and threw the gun into the woods while fleeing. In his second firearms conviction, he fled from police and threw the gun on the roof of a recreation center.

The Defendant has been given two opportunities to serve a sentence in the community while under probation, and the Defendant has squandered each opportunity with new, serious criminal conduct. In the instant case, he admitted to purchasing a firearm as soon as his home

detention expired even though he was categorically prohibited from owning any firearms not only by the terms of his probation, but due to his previous felony conviction.

Moreover, despite being given leniency in his two prior convictions, the characteristics of the firearm suggest escalating behavior. Whereas his two prior convictions involved the possession of a handgun, now he carried an AR-style pistol with a large capacity magazine into a community center. The AR-style weapon lacked any serial numbers, meaning its manufacture and purchase were untraceable and not subject to any background check.

Even more alarming, the Defendant has been the subject of Civil Protective Orders, Temporary Protection Orders, or Extreme Risk Protection Orders filed by three different women. *PSR* at 11. Some of this conduct involved the use and threatened use of firearms.

Specifically, the Defendant has been the subject of two Civil Protective Orders and two Extreme Risk Protective Orders filed by Person 1. *Id.* at ¶31-34. Notably, a Civil Protection Order filed on September 10, 2024, resulted in the issuance of a Temporary Protection Order on September 24, 2024, which was extended multiple times through January 24, 2025. *Id.* at ¶33. On that day, a Civil Protective Order was issued ordering the Defendant not to assault, threaten, or abuse Person 1, and to stay 100 yards away from Person 1. *Id.*

Additionally, Person 1 filed a petition for an Extreme Risk Protection Order ("ERPO") on October 25, 2024. *Id.* at ¶34. In that case, the Court found there was probable cause to believe that the Defendant fired at gun at Person 1 on September 1, 2024, and sent a text message to Person 1 later that same night that said, "Next time I won't miss." *Id.* The Defendant also threatened to kill Person 1's dog and posted numerous photos of himself with firearms. *Id.* Notably, the ERPO required the Defendant to surrender all firearms. *Id.* The ERPO was granted and extended eight times until January 27, 2025, at which time the case was dismissed without prejudice at Person 1's

request. *Id.*

The Defendant has also been the subject of two Temporary Protection Orders filed by Person 2. The second petition, filed on July 22, 2025, was granted and remains active at this time. *Id*. at ¶36.

In sum, the Defendant's history and characteristics support one undeniable conclusion: that the Defendant will not abide by a probationary sentence, and that he poses a great risk of recidivism involving the possession and use of firearms. This conclusion justifies a term of 23 months of incarceration.

### III.   The Sentence Reflects the Seriousness of the Offense and Provides for Just Punishment

The requested sentence is sufficient but not greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from Mr. Rhodes for a significant period of time. It provides general deterrence: it will signal to the community that the possession of illegal firearms equipped with large capacity magazines is a deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for Mr. Rhodes to reflect on the serious and repetitive nature of his crimes.

In the past three years, Mr. Rhodes has repeatedly possessed illegal firearms. He is wanted for an offense that involved the use of a firearm. Despite knowing that carrying firearms can lead to violence, Mr. Rhodes continued to obtain illegal firearms. Supervised probation and home detention have not deterred him. Only incarceration can do that. The requested sentence of 23 months incarceration is a reasonable one.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 23 months of incarceration followed by three years of supervised release.

                                      Respectfully submitted,

                                      JEANINE FERRIS PIRRO
                                    United States Attorney

By:        */s/ Travis Wolf*
              Travis Wolf
              N.Y. Bar No. 5483243
              Assistant United States Attorney
              601 D Street NW
              Washington, D.C. 20530
              202-803-1670
              Travis.Wolf@usdoj.gov